UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                              :
MARCELO BURLON S.R.L.,                        :
                                              :
                         Plaintiff,           :
                                              :              19-CV-11336 (VSB)
          - against -                         :
                                              :           **OPINION & ORDER**
                                              :
AILEI FASHION, et al.,                        :
                                              :
                         Defendants.          :
                                              :
--------------------------------------------------------X

<u>Appearances</u>:

Ashly Erin Sands
Danielle S. Futterman
Jason M. Drangel
Epstein Drangel LLP
New York, NY
*Counsel for Plaintiff*

Lara A. Flath
Jocelyn Emily Strauber
Patrick Joseph Fitzgerald
William Elliott Ridgway
Skadden, Arps, Slate, Meagher & Flom LLP
New York, NY
*Counsel for Intervenor ContextLogic Inc., d/b/a Wish*

<u>VERNON S. BRODERICK, United States District Judge</u>:

      Plaintiff Marcelo Burlon S.R.L. ("Plaintiff" or "Marcelo Burlon") brings this trademark

infringement case alleging that more than 100 Defendants sold counterfeit Marcelo Burlon

products on an e-commerce platform called Wish.  Before me is a motion from ContextLogic

Inc. d/b/a Wish ("Wish") to intervene in this action to oppose Plaintiff's request for injunctive

relief against Wish.  For the reasons herein, Wish's motion to intervene is GRANTED.

## I.    **Factual Background and Procedural History**

This case is one of two related cases alleging the sale of fake Marcelo Burlon products online.  Marcelo Burlon is "a luxury streetwear line designed to combine the comfort of sportswear with the luxury of modern clubwear."  (Doc. 6 ("Compl.") ¶ 7.)  In this case, Plaintiff alleges that 145 online merchants manufactured, marketed, and sold counterfeit Marcelo Burlon products on Wish in violation of the Lanham Act.  (*See generally id.*)  Likewise, in another case, *Marcelo Burlon S.R.L. v. Adidasstore et. al.*, the same Plaintiff alleges that dozens of other online merchants manufactured, marketed, and sold counterfeit Marcelo Burlon products on DHgate, a different e-commerce platform.  (Complaint, *Marcelo Burlon S.R.L. v. Adidasstore et. al. ("Adidasstore")*, No. 19-CV-11333 (S.D.N.Y. Jan. 31, 2020), Doc. 6.)

On December 11, 2019, Plaintiff filed these two related actions under seal and moved *ex parte* for temporary restraining orders ("TROs").  (Docs. 1, 15; *see also Adidasstore*, No. 19-CV-11333, Docs. 1, 10).  On January 7, 2020, I entered TROs in both cases.  (Doc. 31 ("TRO"); *see also Adidasstore*, No. 19-CV-11333, Doc. 20.)  The TRO in this case required Wish to freeze Defendants' Wish user accounts and merchant storefronts and provide expedited discovery concerning Defendants' activities on Wish.  (*See* TRO 7, 12, 13–14.)  On January 13, 2020, Wish filed the instant motion to intervene, (Doc. 24), along with a memorandum in support, (Doc. 25 ("Wish's Mem.")), and two declarations in support, (Doc. 26 ("Strauber Decl."); Doc. 27 ("Behnam-Garcia Decl.")).

Both cases were unsealed on January 31, 2020.  (Doc. 5; *see also Adidasstore*, No. 19-CV-11333, Doc. 5.)  On February 4, 2020, I held a show cause hearing that Wish attended, and I asked the parties to meet-and-confer about whether they could reach agreement as to the issues raised in Wish's motion to intervene.  (Doc. 39 ("Tr."), 16:20-17:16.)  On February 7, 2020,

Plaintiff filed a letter stating that Plaintiff did not consent to Wish's intervention in the action and did not agree to amend the proposed preliminary injunction.  (Doc. 7.)  However, Plaintiff advised that "[i]n the interest of making a good faith effort to assist Wish in complying with the expedited discovery ordered in the TRO, counsel for Plaintiff and Wish have been working together to select search parameters."  (*Id.*)

On February 10, 2020, I entered preliminary injunction orders in both cases.  (Doc. 23 ("PI"); *see also Adidasstore*, No. 19-CV-11333, Doc. 18.)  The preliminary injunction in this case required that Wish continue to freeze Defendants' Wish user accounts and merchant storefronts and that Wish provide additional discovery concerning Defendants' activities on Wish.  (*See* PI 4–5, 8–9.)  On February 11, 2020, Plaintiff filed a status update that "Plaintiff and Wish were unable to reach an agreement with respect to the search parameters" and that "Plaintiff respectfully defers to the Court's consideration of Wish's motion to intervene."  (Doc. 35.)  Thereafter, on February 18, 2020, Plaintiff filed an opposition to Wish's motion.  (Doc. 37 ("Pl.'s Opp.").)  On February 25, 2020, Wish filed a reply in further support of its motion to intervene and in opposition to the preliminary injunction.  (Doc. 41 ("Wish's Reply").)

Separately, on October 8, 2020, Plaintiff's counsel filed a similar lawsuit alleging that other online merchants were selling counterfeit "Socket Shelf" products on Wish.  (Complaint, *Allstar Marketing Group, LLC v. AFACAI et al. ("Allstar")*, No. 20-CV-8406 (S.D.N.Y. Oct. 26, 2020), Doc. 9.)  Judge John P. Cronan was assigned to the case.  On October 15, 2020, Wish moved to intervene and modify the temporary restraining order in *Allstar*.  (Motion, *Allstar*, No. 20-CV-8406, Doc. 18.)  On November 3, 2020, the parties filed a letter indicating that they had "reached an agreement as to a search protocol, as well as the format and content of search results to be provided to Plaintiff by Wish, in satisfaction of Section V(E)(1)(d) of the original TRO."

(Letter, *Allstar*, No. 20-CV-8406, Doc. 32.)  On January 8, 2021, Judge Cronan granted Wish's motion to intervene, except for one aspect of Wish's motion, which was moot "in light of the parties' adoption of a more limited discovery plan."  *Allstar*, 2021 WL 75138, at *4.

The deadline for Defendants to respond to Plaintiff's Complaint in this action was January 31, 2020.  (Doc. 33.)  To date, no Defendant has appeared or responded to the Complaint.  Plaintiff has since voluntarily dismissed 45 of the 145 Defendants from this action. (Docs. 34, 43, 44, 45, 46, 47, 48, 49, 50.)  Wish has not filed anything in support of its motion to intervene since February 25, 2020.

## II.   Legal Standards

To establish intervention as a matter of right, under Federal Rule of Civil Procedure 24(a)(2), "a movant must: (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action."  *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 128–29 (2d Cir. 2001) (internal quotation marks omitted).  The "interest in the proceeding" must be "direct, substantial, and legally protectable."  *Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990).  "Failure to meet any one of these four requirements is grounds for denial."  *Mejia v. Time Warner Cable Inc.*, No. 15-CV-6445 (JPO), 2017 WL 3278926, at *17 (S.D.N.Y. Aug. 1, 2017) (internal quotation marks omitted).  In addition, "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  "Courts typically consider the same four factors whether a motion for intervention is 'of right' under Fed. R. Civ. P. 24(a), or 'permissive' under Fed. R. Civ. P. 24(b)."  *Peterson v. Islamic Republic of Iran*, 290 F.R.D. 54, 57 (S.D.N.Y. 2013).

"[T]he issue of prejudice and undue delay is 'the principal guide in deciding whether to grant permissive intervention.'"  *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 315 F.R.D. 169, 172 (S.D.N.Y. 2016) (quoting *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994)).

### III.   <u>Discussion</u>

Although there is a dearth of case law on this topic, I note that other courts have granted Wish's motion to intervene under similar circumstances.  *See Allstar*, 2021 WL 75138, at *1; *see also* Minute Entry, *Grumpy Cat Ltd. v. Individuals Identified on Schedule A*, No. 1:19-cv-06676 (N.D. Ill. Oct. 29, 2019), Doc. 56; Minute Entry, *Kawada Co. v. Individuals Identified on Schedule A*, No. 1:19-cv-6838 (N.D. Ill. Oct. 16, 2019), Doc. 65.  *But see Off-White LLC v. A445995685, et al.*, No. 18-cv-2099 (S.D.N.Y. Mar. 22, 2018), Doc. 32 (permitting argument from Wish about the scope of the injunction, although Wish had not formally moved to intervene, but ultimately rejecting Wish's specific objection to the injunctive relief); *WowWee Group Limited, et al. v. Haoqin, et al.*, No. 17-cv-9893 (S.D.N.Y. Jan. 16, 2018), Doc. 32 (same).  I find that Wish meets the requirements to intervene as a matter of right, and I therefore need not consider whether permissive intervention is appropriate.

As an initial matter, Plaintiff argues that Wish lacks standing to intervene under Supreme Court precedent that "an intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff requests."  (*See* Pl.'s Opp. 5 (citing *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1651 (2017).)  I agree with Judge Cronan that *Town of Chester* is inapposite.  *See Allstar*, 2021 WL 75138, at *2.  Wish "is not seeking any additional relief beyond the scope of the injunction, but rather seeks to limit the obligations imposed upon Wish in that very injunction."  *Id; see also Little Sisters of the Poor Saints Peter*

*& Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2379, (2020) (holding the lower court "erred by inquiring into the [intervenor's] independent Article III standing" where the intervenor did not "pursue[] relief that is broader than or different from the party invoking a court's jurisdiction").

Plaintiff does not appear to dispute that Wish's application to intervene, filed just six days after the entry of the TRO, was timely.  (*See* Pl.'s Opp. 7–9.)  Instead, Plaintiff essentially asserts that Wish has no legally protectable interest in the action.  (*See id.*)  I disagree.  Wish argues that the injunctive relief compels Wish "to disable all accounts associated with Defendants, and to shut down Defendants' entire online storefronts," which "jeopardizes Wish's commissions from sales of thousands of Defendants' non-infringing products."  (Wish's Mem. 4–5.)  Plaintiff only bolsters Wish's argument by alleging that "Wish profits by taking a 15 percent cut of each sale and collecting fees from sellers in exchange for promoting products." (Pl.'s Opp. 4.)  I find that Wish's commissions on Defendants' sales are a quintessential "interest relating to the property or transaction that is the subject of the action."  Fed. R. Civ. P. 24(a)(2); *see also Allstar*, 2021 WL 75138, at *3 ("[Wish] seeks to protect only its own interest in the ongoing viability of the marketplaces on its platform, a seemingly fundamental aspect of its business model. . . . [Wish's] interests here are cognizable enough to support a motion to intervene.").

Wish also contends that the TRO "inappropriately burdens Wish—rather than Plaintiff— with the task of manually searching through thousands of available products and determining whether other, unidentified listings are potentially infringing."  (Wish's Mem. 5.)  Indeed, Wish requests that Plaintiff be ordered to "post a substantial bond" because of, among other considerations, "the number of employee hours Wish would need to commit to complying with the injunction."  (*Id.* 21; *see also* Behnam-Garcia Decl. ¶¶ 10–14 (describing the difficulties of

6

identifying additional infringing content using the available technological search functions, and estimating that "Wish would need to commit at least 81 hours of employee time to complete this process").)  Although Plaintiff argues that "compliance with a court's order and production of third-party discovery" is not a protectable interest, (Pl.'s Opp. 8), Plaintiff also admits that if Plaintiff had issued a subpoena for the same information, Wish would have a right to move to quash the subpoena as unduly burdensome, (*see id.* at 9).  I am persuaded by Wish's argument that "[h]aving chosen to proceed by injunction, Plaintiff may not deny Wish a forum to challenge the obligations imposed thereunder by suggesting it would be more appropriate for Wish to move to quash a subpoena that Plaintiff chose not to issue."  (Wish's Reply 3 n.1.)  Moreover, it is hornbook law that an interest "surely is sufficient . . . if the judgment will have a binding effect on the would-be intervenor."  7C Alan Wright, Arthur R. Miller, et al., Fed. Prac. & Proc. § 1908.1 (3d ed.).  Clearly, Wish would be bound by any injunction.

Plaintiff summarily "asserts that Wish will not be impaired by the disposition of the action," (Pl.'s Opp. 9 n.25), and argues that "Wish cannot profit from Defendants' sales of Counterfeit Products and object when ordered to curtail Defendants' counterfeiting activities," (*id.* at 9).  However, "[t]his reasoning begs the question to be decided in the litigation"—whether Defendants have sold counterfeit products in violation of the Lanham Act—"and thereby confuses the merits of the litigation with the standard for intervention under Rule 24(a)(2)."  *In re New York City Policing During Summer 2020 Demonstrations*, 27 F.4th 792, 800 (2d Cir. 2022).  I must follow the Second Circuit's recent guidance that "[i]f a proposed intervenor has an interest that may be impaired by a decision that challenged conduct is unlawful, the district court may not deny intervention on the ground that its decision on the merits will be legally correct" because "Rule 24(a) assumes that questions about the lawfulness of challenged conduct will be

subject to adversarial testing." *Id.* at 801.  In other words, Wish's interest in its commissions

from Defendants' sales may be impaired by the injunctive relief issued in this case, even if—and

because—the heart of the litigation is about whether those very sales are unlawful.  *See also*

*Allstar*, 2021 WL 75138, at *3.

      In a footnote, Plaintiff argues that Wish's "alleged interest is adequately protected . . . by

an existing party, Defendants, as these interests belong to Defendants, not Wish."  (Pl.'s Opp. 9

n.25.)  First, Wish's interests in its sales commissions and in avoiding unduly burdensome

discovery do not belong to Defendants.  Second, Wish's interests plainly have not been protected

in any way by Defendants, all of whom have failed to appear in this action.  Indeed, Wish

anticipated that Defendants could not adequately protect Wish's interests, both because

"Defendants are unlikely to have the resources to appear and challenge any injunctive relief

issued," and because "Wish's relationship with Defendants exists solely as a result of the

Merchant Agreement, and Defendants have no other long-term financial or other incentives that

would cause them to sufficiently represent Wish's interests here."  (Wish's Mem. 9.)

Accordingly, I find that Wish has satisfied all four prerequisites for intervention as of right.  *See*

*Brennan*, 260 F.3d at 128–29.

      However, I decline to modify the preliminary injunction at this time.  To date, Plaintiff

has voluntarily dismissed 45 of the 145 Defendants from this action, (Docs. 34, 43, 44, 45, 46,

47, 48, 49, 50), and it is unclear if any of the 100 remaining Defendants are still selling on Wish.

Additionally, months after the motion in this case was fully briefed, Wish and Plaintiff's counsel

were able to "reach[] an agreement as to a search protocol, as well as the format and content of

search results to be provided to Plaintiff by Wish," in the *Allstar* case before Judge Cronan.

(Motion, *Allstar*, No. 20-CV-8406 (JPC), Doc. 32.)  Therefore, the parties are directed to meet-

and-confer again to see if they can reach agreement without court intervention.  If not, Wish may renew its motion to modify the preliminary injunction.

    **IV.**    <u>**Conclusion**</u>

    For the foregoing reasons, Wish's motion to intervene is GRANTED.  Within 21 days of the entry of this Order, Plaintiff and Wish shall meet-and-confer and file a status update indicating what, if any, additional judicial relief is needed in this action, or if this case may be closed.  If Plaintiff does not file the status update within 21 days, I may dismiss this case for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

SO ORDERED.

Dated: August 31, 2022
      New York, New York

                                      Vernon S. Broderick
                                      United States District Judge